# FOR PUBLICATION

**FILED & ENTERED**

**FEB 03 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** bolte    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>BioData Medical Laboratories, Inc.<br><br>　　　　　　　　　Debtor(s). | Case No.: 6:16-bk-20446-MW<br><br>Chapter: 11<br><br>**MEMORANDUM DECISION AND ORDER ON EMERGENCY MOTION TO FILE VANTAGE AGREEMENT UNDER SEAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9018, OR IN THE ALTERNATIVE SEAL PROVISIONS OF THE AGREEMENT**<br><br>Date:　　January 10, 2017<br>Time:　　2:00 p.m.<br>Place:　　3420 Twelfth Street<br>　　　　　Courtroom 225<br>　　　　　Riverside, CA 92501<br>　　　　　　　or<br>　　　　　411 West Fourth Street<br>　　　　　Courtroom 6C<br>　　　　　Santa Ana, CA 92701 |

Robert M. Yaspan, Esq., Law Offices of Robert M. Yaspan, for Debtor.

Richard W. Brunette, Esq., Sheppard, Mullin, Richter & Hampton LLP, for Vantage Medical Group, Inc.

Everett L. Green, Esq., United States Department of Justice, Office of the United States Trustee.

**WALLACE, J.**

Bankruptcy Code section 107(a) generally provides that a paper filed in a bankruptcy case is a public record and open to examination by members of the public at reasonable times without charge.  However, upon request of a party in interest, a bankruptcy court is required under Bankruptcy Code section 107(b) to "protect an entity with respect to a trade secret or confidential research, development, or commercial information."  *See also* Fed. R. Bankr. P. 9018.  Such protection is typically accomplished by sealing the paper on the court's docket, thereby protecting the paper from disclosure.

In the matter now before the Court, a chapter 11 debtor is a party to an alleged executory contract containing a confidentiality clause that requires the debtor to refrain from disclosing the contract's terms.  The debtor is concerned that a disclosure of the contract's terms in connection with a motion relating to the contract's rejection may breach the confidentiality clause and expose the bankruptcy estate to an administrative expense claim for breach of contract.  Apart from that single concern, however, the debtor is indifferent to whether the contract's terms become public.  The other party to the contract urges the Court to place the contract under seal or, at the very least, permit the redaction of that portion of the contract that sets forth prices for services charged by the debtor to the other party for medical services provided by the debtor.  Reading between the lines, the other party wishes to prevent the public disclosure of amounts it is paying the debtor for the performance of medical services (as described in greater detail below).

\\\

## BACKGROUND FACTS

BioData Medical Laboratories, Inc. ("Debtor") owns and operates a medical testing business that provides medical test services for individuals. Fees for Debtor's services are paid by private parties, insurance companies and government entity health providers. In May 2014, Debtor entered into an agreement with Vantage Medical Group, Inc. aka Vantage IPA ("Vantage") whereby Debtor would provide certain types of medical lab services to Vantage for specified capitated rates. Vantage is a managed care organization that provides health care services to its members. The May 2014 agreement was superseded by a Managed Care Laboratory Services Agreement between Debtor and Vantage dated October 1, 2015 (the "Agreement"). Vantage alleges that the Agreement was superseded by a subsequent agreement between the parties dated March 1, 2016.

Section 21.1 of the Agreement provides that Vantage and Debtor shall treat and keep as confidential all information or data relating to the business operations of Vantage and Debtor acquired in connection with the Agreement and shall not disclose the same without the prior written permission of the other party. These confidentiality provisions survive any termination of the Agreement. It is this portion of the Agreement that Debtor fears breaching were it to attach an un-redacted copy of the Agreement to a pleading relating to the Agreement's rejection.

Debtor alleges that Vantage misrepresented the amount of outside-network lab charges it was incurring and then compounded the issue by back-charging these amounts to the Debtor. Debtor contends that as a result of these back-charges and other costs incurred by Debtor relating to the Agreement, Debtor suffered major financial losses, became unprofitable and found it necessary to file a voluntary chapter 11 petition on November 28, 2016.

The next day, on November 29, 2016, the Debtor filed an Emergency Motion to File Vantage Agreement Under Seal Pursuant to Federal Rule of Bankruptcy Procedure 9018, Or In the Alternative Seal Provisions of the Agreement, Docket No. 14 (the

"Motion"). The Court held a hearing on the Motion and entered an order on December 16, 2016 placing the Agreement under temporary seal and continued the hearing to January 10, 2017. The Office of the United States Trustee filed an opposition to the Motion (Docket No. 93, filed December 27, 2016). Vantage filed a Statement of Position of Vantage Medical Group, Inc. As to Motion to File Vantage Agreement Under Seal Pursuant to Federal Rule of Bankruptcy Procedure 9018, Or in the Alternative Seal Provisions of the Agreement (Docket No. 104, filed January 5, 2017) (the "Vantage Position Statement"), supported by Declarations of Kristen Miranda and Karen Hiteshi. At the hearing on January 10, 2017, oral argument or comment was presented by Debtor, Vantage and the Office of the United States Trustee.

**JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order 13-05, filed July 1, 2013, of the United States District Court for the Central District of California. Venue is proper pursuant to 28 U.S.C. § 1408. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (O).

**SEALING OF COURT DOCUMENTS**

Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014). The strong presumption of openness does not permit the routine sealing of judicial records to the public. A party seeking to seal any part of a judicial record bears the heavy burden of showing that the material is the kind of information that courts will protect. *Oliner v. Kontrabecki, supra,* 745 F.3d at 1026.

These general principles apply in bankruptcy cases. Bankruptcy Code section 107(a) is a codification of the common law right to inspect judicial records and documents. *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006). Section 107(a) creates a presumption that papers filed in bankruptcy court are public records. *Id.* The Bankruptcy Code provides for two mandatory exceptions to this

presumption in section 107(b).  Upon the request of an interested party, a bankruptcy court must "protect an entity with respect to a trade secret or confidential research, development or commercial information" and, second, must "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case."  11 U.S.C. § 107(b).

The sealing of a paper is mandatory, not optional, if the paper or its contents or a portion thereof falls with the ambit and scope of section 107(b).  *Ad Hoc Comm. Of Personal Injury Asbestos Claimants v. Dana Corp. (In re Dana Corp.)*, 412 B.R. 53, 58 (S.D.N.Y. 2008) (Koetl, J.).  In cases where protection is required, the form of protection that must be granted is not commanded by statute, and a court possesses discretion when deciding how to protect commercial information.  *In re Borders Group, Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011).

Protected information consists of trade secrets and confidential research, development or commercial information.  11 U.S.C. § 107(b).  Here, Vantage asserts that the pricing information in the Agreement that it seeks to protect falls within the classification of confidential commercial information.[1]  The Debtor does not expressly take a position on what classification category within section 107(b) applies to the Agreement and is more concerned about not opening itself up to a potential administrative expense for breach of contract were it to file an un-redacted, unsealed copy of the Agreement with the Court.

Commercial information has been defined as information which would cause an unfair advantage to competitors by providing them with information as to the commercial operations of the party seeking protection of such information.  *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994). *See also In re Itel Corp.*, 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982).  The party seeking

---

[1] Vantage is not the movant with respect to the Motion but certainly is a party in interest.  The Court will treat the Vantage Position Statement as a request by a party in interest for protection of information from disclosure within the meaning of 11 U.S.C. § 107(b).

protection of information from public disclosure has the burden of proof.  *In re Quigley Co.*, 437 B.R. 102, 153 (Bankr. S.D.N.Y. 2010).

Debtor has expressly stated that it is indifferent as to whether the Agreement is publicly disclosed in the Court's records, but feels required to bring the Motion to minimize the possibility that it could be found in violation of Agreement section 21.1 relating to confidentiality.  In any event, Debtor has made no showing whatsoever that the Agreement's disclosure could create an unfair advantage to Debtor's competitors.  Additionally, it is a fair inference from Debtor's indifference to disclosure that no such unfair advantage would accrue to Debtor's competitors if the Agreement's terms were to be disclosed (else Debtor would be more vigorously opposing disclosure).

Vantage argues that the Agreement is no longer in effect, having been terminated and then superseded by a laboratory services agreement dated March 1, 2016.  Such argument is better made in connection with a pending motion relating to the Agreement's rejection, which is not now before the Court for decision.  In any event, Vantage completely fails to explain why or how a termination (or non-termination) of the Agreement would have any bearing upon whether the Agreement contains confidential commercial information.

Vantage asserts that the Agreement "contains proprietary pricing information whose disclosure would materially prejudice Vantage in its business relationships with other service providers." Vantage Position Statement at page 4, lines 4-6.  Vantage notes that "Vantage purchases lab services from other providers, and disclosing contract prices creates a commercial disadvantage." Vantage Position Statement at page 4, lines 16-18.  In evaluating these arguments, the Court is required to examine whether the disclosure of such pricing information would cause an unfair advantage to Vantage's competitors by providing them with information as to Vantage's commercial operations.  *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, *supra.*

\\\

A service provider is usually not a competitor of the party to whom the service is provided. A physician is not usually in competition with his or her patients. A company that services a corporation's office copiers and computers is not usually in competition with the corporation receiving and paying for such services. Although there may be instances where a business hires a service provider who is in competition with it, those types of transactions are undoubtedly not the norm. Here, Vantage has failed to show that Debtor (the service provider) is in competition with Vantage. Vantage also has failed to make any kind of showing whatsoever that Vantage is in competition with other laboratory service companies and that knowledge of prices paid by Vantage to Debtor would provide such other laboratory service companies with an unfair competitive advantage. It is also quite telling in this regard that Debtor, which presumably is in some kind of competition with other laboratory services companies, has expressly stated that it is indifferent to the Agreement's public disclosure.

Vantage has not made clear to the Court who its competitors are, either by name or by generic description. Without anything better to rely upon, the Court will assume that Vantage is in competition with other managed care organizations and will consider whether the disclosure of the pricing information in the Agreement would confer an unfair advantage upon these other managed care organizations. In this regard, it might be hypothetically supposed that Vantage is paying lower prices to Debtor than is usually paid in the industry and that if Vantage's competitors knew about this, they would begin to do business with Debtor, lower their costs and thereby compete more effectively against Vantage. If that is indeed the case, Vantage has made no showing and has introduced no evidence supporting these points. For instance, in order to make out such an argument, Vantage would need to show that (1) the other managed care organizations are currently paying higher prices to laboratory services providers than Vantage is, (2) such services are available from Debtor at a lower price, (3) Debtor is ready, willing and able to provide such services to Vantage's competitors at such lower price, (4) the price differential and total savings are of sufficient magnitude to provide

the competing managed care organizations with a competitive advantage that is material, and (5) the competing managed care organizations would not know of this cost-reducing opportunity but for the disclosure of the pricing provisions of the Agreement. Because Vantage has not made any of these showings, it has failed to prove by a preponderance of the evidence that a disclosure of the proprietary pricing information in the Agreement would create a competitive advantage for other managed care organizations or other competitors of Vantage.

For these reasons, the Court denies the Motion with prejudice, vacates that portion of its previous ruling requiring a temporary sealing of the Agreement and orders the Agreement published on the Court's docket and in its records.

**IT IS SO ORDERED.**

###

Date: February 3, 2017

Mark S. Wallace
United States Bankruptcy Judge